LAW OFFICE OF
**ROBERT L. KEOGH**
POST OFFICE BOX GZ
HAGÅTÑA, GUAM 96932
TELEPHONE (671) 472-6895



FILED
DISTRICT COURT OF GUAM

AUG 10 2007

JEANNE G. QUINATA
Clerk of Court

Attorneys for Plaintiffs

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| DEBORAH K. RUTLEDGE and THOMAS R. RUTLEDGE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL CASE NO. CIV06-00008<br><br>LR37.1 STIPULATION<br>RE: DISCOVERY DISPUTE |

The parties herein, by and through their respective undersigned counsel, hereby stipulate as follows:

1. On July 27, 2007, pursuant to plaintiffs' notice, a conference was held between counsel to seek a resolution to a discovery dispute.

2. Plaintiffs raised two issues for discussion:

   a. The propriety of conducting further expert depositions in light of the cut-off dates in the Scheduling Order and the timing of such depositions if they are to take place, and

b. In the event further depositions do take place the issuance of a Protective Order with respect to defendant having two separate counsel conduct and present objections at the same time at such deposition sessions and from counsel for defendant asserting objections in violation of FRCivP 30(d).

3. A resolution of the dispute was not reached in spite of good faith efforts to do so.

4. The dispute is as follows:

**A. Depositions.**

The discovery cut-off dates in the Scheduling Order filed on June 15, 2006 have passed. Notwithstanding, the parties were seeking to stipulate to the scheduling of expert depositions only in light of prior stipulations to extend expert identification dates. The parties have now agreed upon a schedule subject to the approval of the Court.

Plaintiffs' position is that such depositions can take place only by agreement of the parties with Court approval or by direct Order of the Court. An agreement of the parties requires that the dates of the proposed depositions be acceptable to both parties. Pursuant to Rule 26(c), the Court may issue such orders as appropriate pertaining to the conduct, vel non, of such discovery.

The parties have agreed to an expert deposition schedule subject to the approval of the Court as follows:

1. Dr. Gary Towle, San Francisco, CA, Sunday, August 26, 2007 at 8:00 a.m.

2. Dr. Michael Meriwether, Sarasota, FL, Friday September 7, 2007 at 8:00 a.m.

3. Dr. John Steele, Guam, before September 30, 2007

4. Gary Hiles, Guam, before September 30, 2007, to take place on a Saturday or during evening hours.

5. Dr. Laura Taylor, Portland, OR, Honolulu, HI or Guam, in person or via video teleconference, before September 30, 2007.

B. **Plaintiff's Position as to Protective Order**

1. During depositions previously taken in this matter, counsel for defendant utilized improper discovery tactics and engaged in improper discovery behavior as follows:

a. Having two separate attorneys for the same party present objections and arguments simultaneously during the course of the same deposition.

- 3 -

b. Presenting numerous repeated objections in a non-concise, argumentative and suggestive manner in violation of Rule 30(d)(1).

c. Engaging in unprofessional and uncivil behavior toward plaintiffs' counsel during the course of conducting depositions.

2. Excerpts from the deposition transcript filed with the Declaration of Robert L. Keogh clearly show who abused the discovery process. During the deposition of Dr. Duncan, over the course of 49 pages of transcript, defendant stated 79 objections. The two lawyers who were in attendance on behalf of the United States government actively participated in tandem, <u>both</u> voicing objections seriatim and cumulatively. The objections were clearly designed to advise the witness what answer they wanted him to give to the question. The eventual answer of the witness frequently parroted verbatim the objections raised by defendant's counsels.

3. Pursuant to Rule 30(d)(1) the proper course for defendant was either state an objection in a concise, non-argumentative and non-suggestive manner or to instruct the witness not to answer the question if they sincerely believed the privilege was being violated.

4. Furthermore, only one lawyer should be permitted to state an objection on behalf of each party and defendant should not

- 4 -

be allowed to engage in the gangland tactics employed at the Duncan deposition. If Ms. Clark was really representing the witness as the United States argues, then her role is to advise the witness, not state objections on the record on behalf of the United States.

5. Defendants' counsels' behavior was beyond the pale and plaintiffs' are entitled to protection from a repeat of this behavior in the event further depositions take place.

6. In the event further depositions are ordered by the Court, plaintiffs seek a Protective Order pursuant to Rule 26(c) protecting them from such behavior at said further depositions.

**C. The United States Position as to Protective Order.**

The United States does not agree with Plaintiffs' argument for a protective order. Plaintiffs' attorney's complaints stem from his repeated efforts to manipulate a fact witness into rendering opinions that are only appropriate for expert witnesses.

It should be noted that all fact witness depositions have ended and only expert witness depositions remain. In expert depositions, Plaintiff clearly may ask opinion questions. However, contrary to Plaintiff's argument in support of motion for protective order, the fact witnesses did answer Plaintiff's questions, including those that attempted to have them respond to

- 5 -

issues and events they did not witness.

Besides violating the lack of foundation and inappropriate nature of fact witnesses being asked if they have an opinion about whether someone with symptoms that they did not witness (and arguably were never even presented) should have been "referred" earlier, Plaintiff's questions attempt to have the military witnesses violate their own DOD regulations. Those regulations are based on 32 C.F.R. § 97.6(e), entitled *Release of Official Information in Litigation and Testimony by DoD Personnel as Witnesses*. That regulation reads as follows:

> (Department of Defense) personnel shall not provide, with or without compensation, opinion or expert testimony concerning official (Department of Defense) information, subjects, or activities, except on behalf on the United States or a party represented by the Department of Justice.

The regulation prohibits employees from giving opinion or expert testimony. Federal regulations take on the character of law. State v. Alaska Land Title Ass'n, 667 P.2d 714, 725 (Alaska 1983), cert. denied 464 U.S. 1040 (1984).

Plaintiff's case turns on convincing the Court that the health care providers at Andersen Air Force Clinic were, in fact, presented in early August with a patient that was manifesting full blown Cauda Equina Syndrome. The witnesses support a

- 6 -

circumstance where the rare syndrome manifested itself just prior to her examination at Naval Hospital in late August. Plaintiff has tried to get the fact witnesses to offer opinions based on Plaintiff's interpretation of events that were not witnessed by the individual witness.

Plaintiff's attempts have caused the AUSA in the room with him to place his objections on the record. In addition, the SAUSA, who is also a DOD attorney, placed objections about the DOD regulations. The SAUSA and the witness were on the other side of a Video Teleconference. The objections were repeated each time the Plaintiff re-asked the witness to respond with testimony other than what he witnessed and participated in. The witness expressed distress over such questions, but answered each time.

For example, Plaintiff wanted Dr. Duncan, the treating physician at Naval Hospital, to give opinion testimony regarding the care at Anderson Clinic. He asked:

*Q On August 27, 2004, did the symptoms that Ms. Rutledge present, at the clinic when you saw her, did they represent what you would consider to be classic symptoms of cauda equina syndrome?*

*A What do you define as classic, sir?*

- 7 -

Case 1:06-cv-00008   Document 20   Filed 08/10/2007   Page 7 of 10

*Q Well, I guess I would ask you, if you can define it as a classic — as classic symptoms.*

*A I believe - I may be mistaken here, but I believe that would be a good question for your expert. I may be mistaken, but I believe that's more of an expert witness question.*

*Q All right. But -*

*A If you're asking me, did I think the patient had cauda equina syndrome on that day, that's what I documented, yes, sir.*

*Q All right. From your experience, doctor, back in August of 2004, with the symptoms that you saw Ms. Rutledge having, is this the type of diagnosis that you would have also expected, again, in August of 2004, that you would have expected an urgent care clinic such as the Andersen Clinic to be able to make?*

***Mr. Schwab*** *Objection. That calls for outstanding speculation.*

***By Mr. Keogh:***
*Q Can you answer the question, please, doctor?*

**A** *That's speculation sir.*

Transcript of Douglas Duncan, Second Deposition, June 30, 2007, pages 79-81.

The Plaintiff then went on to ask for the opinion again, this time using the medical records from the Clinic (that Dr. Duncan had never seen). Objections were entered. All three attorneys discussed the prohibition of the regulations and impropriety of the line of questioning. Again, the witness answered.

The witness saw the plaintiff on August 27 at Naval Hospital but the attorney continued to ask the doctor's opinion about how she presented at Andersen Clinic on August 2. At one point the witness stated:

> **A** *But, again, I'm unclear on why I'm being asked to review a note that's not my note, sir. That's -*

Transcript at page 88.

Later, Dr. Duncan responded by asking the Plaintiff's attorney: "*Now, have you asked Captain Rau these questions —*" Transcript at page 92. The doctor was referring to the physician assistant that did see the patient in early August.

Plaintiff's questions were inappropriate, and unproductive. They also called for testimony in violation of the DOD

- 9 -

regulations.

The United States is not seeking a protective order because all of the fact witnesses have completed their depositions. Only experts are still to be deposed and Plaintiff can ask expert questions at those depositions.

5. The parties agree to have this dispute heard ex parte at the earliest opportunity of the Court due to its time sensitive nature.

**LAW OFFICE OF ROBERT L. KEOGH**
Attorneys for Plaintiffs

DATE: 8/10/07            By: /s/ Robert L. Keogh
                              ROBERT L. KEOGH


**OFFICE OF THE U.S. ATTORNEY**
Attorneys for Defendant
United States of America

DATE: 8-9-7             By: /s/ Mikel W. Schwab
                              MIKEL W. SCHWAB

- 10 -