LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
KATHARYNE P. CLARK
Special Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM
JAN 18 2008
JEANNE G. QUINATA
Clerk of Court

# DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| DEBORAH K. RUTLEDGE and THOMAS R. RUTLEDGE, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL CASE NO. 06-00008 <br><br> UNITED STATES' TRIAL BRIEF |

The United States, by and through its attorneys in the above entitled matter, submits this trial brief.

## A. FACTUAL CONTENTIONS

The instant case is a medical malpractice case brought under the Federal Torts Claim Act, 28 U.S.C.S. § 2671 et seq.,

**1) Liability**

Plaintiffs in the instant case allege that government actors MAJ Natalie Giscombe and CPT Steven Rau, mid-level providers at the Family Practice Clinic, Andersen Air Force Base, Guam, were negligent in failing to diagnose Plaintiff Deborah Rutledge with the very rare neurosurgical condition, cauda equina syndrome.

Defendant United States does not dispute that Plaintiff Deborah Rutledge did in fact develop cauda equina syndrome. A consulting orthopedic surgeon at Naval Hospital Guam suspected the diagnosis on 27 August, 2004, and air-evacuated Ms. Rutledge on an emergency basis to Tripler Army Medical Center, Honolulu, Hawaii. At Tripler, spinal surgeon MAJ Joe Orchowski performed surgery to repair a central herniation of a lumbar disk which had extruded disk material into the spinal canal, compressing the cauda equina area of the lower spinal cord.

The United States does dispute Plaintiffs' claim that she developed cauda equina syndrome prior to August 25, 2004, or that the United States was negligent in failing to make the diagnosis at an earlier time during her treatment at Andersen from July 27, 2004 – August 17, 2004. Defendant anticipates Plaintiff will testify that she went to Andersen AFB Clinic complaining of dramatic symptoms of vaginal numbness and severe urinary retention. The United States disputes Plaintiff's version and chronology of the facts, which is not borne out by her medical records, by her treating medical professionals, by other fact and expert witnesses, or by human experience and common sense. The United States will present evidence, including medical records and the testimony of her medical providers, in stark contrast to Ms. Rutledge's

2

assertions of fact. The United States will present evidence, that show Plaintiff presented to Andersen AFB Clinic with complaints and findings consistent with mechanical low back pain, and that she was treated appropriately with rest and medication. When her condition did not improve with conservative treatment, she was appropriately referred to Naval Hospital, Guam for evaluation and diagnostic testing by an orthopedic surgeon.

Plaintiff was evaluated at Andersen AFB Family Practice Clinic on July 27, August 2, and August 17, 2004. She was scheduled to be seen for an orthopedic appointment at NH Guam on August 23, 2004. However, Super Typhoon Chaba passed very near Guam on August 22, 2004, and safety considerations necessitated the temporary closure of the clinics at the Naval Hospital. As a result, Plaintiff's appointment was rescheduled from August 23 to August 27, 2004. On August 25, two days before her re-scheduled appointment, Plaintiff abruptly developed fecal incontinence. Defendant will present expert evidence that it was at *this* point in time that Plaintiff developed neurological compromise of the cauda equina, and not before. Simply put, providers at Andersen did not diagnose cauda equina compromise because at the time she was seen in the Andersen clinic, she had not yet developed cauda equina compromise. The care rendered at the Andersen clinic met applicable standards of care, and the United States is not liable to Plaintiffs.

**2) Damages**

Plaintiffs allege that Plaintiff Deborah Rutledge has profound and permanent neurological damage as the result of delayed diagnosis of cauda equina syndrome. Plaintiffs further implicitly

3

allege that Deborah Rutledge is permanently and completely disabled from the workforce due to bowel and bladder dysfunction and back and leg pain.

Plaintiffs further allege that a delay in diagnosis of cauda equina syndrome has caused Plaintiff Deborah Rutledge to have a loss of genital sensation resulting in a loss of consortium by Plaintiff Thomas Rutledge.

The United States disputes the claimed degree of Plaintiff Deborah Rutledge's residual neurological compromise to her bowel and bladder. Plaintiff, who remains a military dependant entitled to no-cost medical care, has inexplicably obtained very little medical evaluation since her 2004 surgery. However, the objective urological testing that was done indicates good bladder function. The United States will also offer the expert testimony of an extremely qualified neurosurgeon about the typical progress of patient improvement following cauda equina syndrome, which along with her objective test results, calls into question Plaintiff's claims.

Further, the United States disputes the causation of Plaintiff Deborah Rutledge's complaints of back and leg pain and disability. It is an undisputed fact that Deborah Rutledge had a herniated lumbar disk that required spinal surgery, whether she had developed cauda equina or not. There is no allegation – nor could there reasonably be one - that Plaintiff's herniated disk was in any way caused by Defendant. The back and leg pain result from her herniated disk and spinal surgery and are the result of her disease, and not the proximate result of any alleged negligence in diagnosis of cauda equina syndrome.

4

Finally, the United States disputes the implicit allegation that Plaintiff Deborah Rutledge is permanently and completely disabled from the workforce as the result of an alleged delay in diagnosis of her cauda equina syndrome. Plaintiffs have provided no reliable evidence that Deborah Rutledge has residual injury from her cauda equina syndrome which precludes her from performing her usual work. Further, Plaintiffs disregard evidence that shows Deborah Rutledge left the work force at the time of her marriage, and had taken little to no effort to obtain work at the time she was treated at the Andersen Air Force Base Clinic, or since.

**3) Expert Testimony**

Resolution of this medical malpractice case will necessarily depend on the opinions offered by the experts, and the credibility given by the qualifications of the various experts.

Plaintiffs rely on the opinion of two physicians. Dr. Gary Towle is a San Francisco Bay Area emergency room physician[1] who Plaintiffs retained to testify about the standard of care in a family practice clinic on a geographically remote base. Dr. Towle admitted in his deposition that in 35 years of practicing medicine, he has never seen a patient with cauda equina syndrome. Dr. Towle also admitted he has never met or examined Plaintiff, and the facts upon which he relied in reaching his opinions about her complaints and presentation in the Andersen Clinic came

---

1 Dr. Towle did not complete a residency or any specialty training as an Emergency Department provider. He attained Board certification through a "grandfathering" process. He admits he would be ineligible to gain Board certification at this time.

5

from a description she wrote, quite some time after the diagnosis of cauda equina was made.

Dr. John Steele, Plaintiff's other expert, is a neurologist who was retained to offer an opinion regarding Plaintiff's post-operative condition. He examined her in a hotel room in New York City in 2006.

In his deposition, Dr. Steele reluctantly admitted that in over 50 years of practicing medicine he has never diagnosed or cared for a patient with cauda equina syndrome. Dr. Steele did admit cauda equina syndrome is a condition treated by neurosurgeons, not by neurologists. Dr. Steele also admitted the facts upon which he relied in reaching his opinions came from the description written by Plaintiff. Indeed, prior to submitting the report to opposing counsel, Dr. Steele sent Plaintiff a copy of his report to allow her to review and edit his statement of facts.

Defendant United States retained Dr. Michael Meriwether, an eminently qualified and experienced Board certified neurosurgeon, to evaluate this case. Dr. Meriwether has specific formal education, residency training, and personal experience as a neurosurgeon in military and private practice in the diagnosis, treatment, and prognosis of patients with cauda equina syndrome. Alone among the experts, Dr. Meriwether has himself cared for several patients with cauda equina syndrome. Also alone among the experts, Dr. Meriwether did an exhaustive search of the peer-reviewed literature, and relied on numerous articles in forming his opinions. Dr. Meriwether testified in his deposition that cauda equina syndrome is a very rare disorder that can evade diagnosis even by highly trained neurosurgeons.

6

It is Dr. Meriwether's opinion that Plaintiff Deborah Rutledge's presenting complaints and examinations at Andersen Family Practice Clinic suggested mechanical back pain, likely due to nerve root irritation from a bulging intervertebral disc, and that her treatment was appropriate and consistent with the standard of care. It is further Dr. Meriwether's opinion that the patient's lumbar disc ruptured on or about August 25, 2004, causing the cauda equina compression <u>at that time</u>, as evidenced by her complaints of that date of a sudden increase of her back pain and the new onset of fecal incontinence. Plaintiff's condition at the time she was treated at Andersen Family Practice Clinic was neither suggestive nor predictive of the later development of cauda equina syndrome. Her condition *at that time* was appropriately treated within the standard of care. Different treatment as suggested by Plaintiff – either earlier referral to a specialist, physical therapy, or earlier MRI testing - would not have brought about a different result or prevented the later development of cauda equina syndrome.

### 4) Summary

In simple form, the evidence will show Plaintiff was appropriately treated for back pain due to spinal nerve root irritation at Andersen AFB Family Practice Clinic, and subsequently underwent an extremely rare event on or about August 25, 2004, when her bulging intervertebral disc ruptured and the contents of the disc spilled and occluded her spinal canal, compressing the cauda equina and leading to the development of cauda equina syndrome. Her allegations that providers at Andersen were negligent in failing to diagnose or prevent cauda equina syndrome are incorrect and must fail.

7

The evidence will also show that Plaintiff's allegations of total disability due to lack of bowel and bladder control are unfounded. The evidence will also show that Plaintiff's allegations of total disability due to back pain are not the proximate result of the alleged negligence, but rather the natural consequence of her intervertebral disc disorder and the surgery required to correct it.

B. **ISSUES OF LAW**

1. The issues of the government's liability and the claimant's right to damages are determined by Guam law. *Richards v. U.S.,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). In *Richards*, the U. S. Supreme Court ruled the Federal Tort Claims Act requires federal courts, in multistate tort actions, to look in the first instance to law of the place where the allegations of negligence took place, and does not, through use of the words "act or omission," refer to the place where the negligence had its operative effect. 28 U.S.C.A. §§ 1346(b), 2674. In the instant case, Plaintiff alleges that negligence occurred in Guam only.

2. The Federal Torts Claims Act, 28 U.S.C. §§ 1346 (b), 2671 to 2680, is the exclusive remedy for persons seeking damages from the United States for personal injuries.

3. Plaintiff has the burden of proof to show that a federal employee committed a negligent or wrongful act or omission. Further, the alleged negligent or wrongful act or omission must have been the proximate cause of the injury. *Carne v. United States*, 630 F.Supp. 641 (D. Mont. 1986).

8

4. Health care providers shall adhere to an appropriate standard of care in the evaluation and treatment of patients, and said standard is established by expert testimony. *Holmes v. Giddings*, 2000 U.S. App. Lexis 7216 (9th Cir. 2000); *Warren v. U.S.*, 1993 U.S. App. Lexis 18389 (9th Cir. 1993).

## C. **EVIDENTIARY ISSUES**

No evidentiary issues are anticipated.

SUBMITTED this 18th day of January, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

BY: *(signature)*
MIKEL W. SCHWAB
Assistant U.S. Attorney

*(signature)*
KATHARYNE P. CLARK
Special Assistant U.S. Attorney

9

## CERTIFICATE OF SERVICE

I, Jacqueline Emmanuel, working in the U.S. Attorney's Office, in the District of Guam, hereby certify that a copy of the "United States' Trial Brief", in Civil Case No.06-00008, <u>Deborah K. Rutledge and Thomas R. Rutledge v. United States of America</u>, was served by personal service to Robert L. Keogh, Suite 105, Angela Flores Building, 243 Martyr Street, Hagåtña, GU 96910 on January 18, 2007.

*[signature]*

Jacqueline Emmanuel

10