LAW OFFICE OF
**ROBERT L. KEOGH**
POST OFFICE BOX GZ
HAGATÑA, GUAM 96932
TELEPHONE (671) 472-6895

Attorneys for Plaintiffs



FILED
DISTRICT COURT OF GUAM
JAN 30 2008
JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| DEBORAH K. RUTLEDGE and THOMAS R. RUTLEDGE,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | CIVIL CASE NO. CIV06-00008 |

# PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE OR LIMIT TESTIMONY OF DR. MERIWETHER AT TRIAL; CERTIFICATE OF SERVICE

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. **ARGUMENT**

    A.   Doctor Meriwether's methodology is
        unscientific and therefore inadmissable . . . . . . . . 1

    B.   Dr. Meriwether remains the wrong expert
        for this case . . . . . . . . . . . . . . . . . . . . . 4

    C.   Dr. Meriwether's testimony is also excludable
        under Civil Procedure Rules 26(a)(2) and 37(c). . . . 9

III. **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Case 1:06-cv-00008   Document 52   Filed 01/30/2008   Page 2 of 15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

Ascher v. Target Corp.,
F. Supp. 2d __, 2007 WL 328744 at *7 (E.D.N.Y. 2007) . . . . . . 3

Broders v. Heise,
924 S.W. 2d 148, 153 (Tex. 1996) . . . . . . . . . . . . . . . 6

Cleveland v. United States,
457 F. 3d 397 (5th Cir. 2006) . . . . . . . . . . . . . . . 7, 8

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579, 591, 113 S.Ct. 2786,
125 L. Ed. 2d 469 (1993) . . . . . . . . . . . . . . . . . . . 7

Hal Roach Studios v. Richard Feiner and Co.,
896 F.2d 1542, 1550-51 (9th Cir. 1990) . . . . . . . . . . . . 9

Hall v. Baxter Healthcare Corp.,
947 F. Supp.1387, 1407 (D. Or.,1996.) . . . . . . . . . . . . 8

Jacobsen v. Deseret Book Co.,
287 F.3d 936 (10th Cir. 2002) . . . . . . . . . . . . . . . . 10

Kumho Tire Co. Ltd. v. Carmichael,
526 U.S. 137, 119 S.Ct. 1167, 143 L. Ed. 2d 238 (1999) . . . . 2

Ly v. Austin,
2007 WL 2010757 (Tex. App.) . . . . . . . . . . . . . . . . . 6

Minisan v. Danek Medical, Inc.,
79 F. Supp. 2d 970, 976 (N.D. Ind. 1999) . . . . . . . . . . . 3

Myles v. Laffitte,
986 F. 2d 1414, 1993 WL 36062 (4th Cir. 1993) . . . . . . . . 5

Ortiz-Lopez v. Sociedad Espanola de
Auxilio Mutuo Y Beneficiencia de Puerto Rico,
248 F.3d 29, 34 (1st Cir. 2001) . . . . . . . . . . . . . . . 10

United Phosphorus, Ltd. v. Midland Fumigant, Inc.,
173 F.R.D. 675 (D.Kan. 1997) . . . . . . . . . . . . . . . . . 2

Whisnant v. United States,
71 Fed. R. Evid. Serv. 551,
2006 WL 2927732 (W.D. Wash. 2006) . . . . . . . . . . . . . . 7

**<u>Federal Rules</u>**

FRE 702. . . . . . . . . . . . . . . . . . . . . . .   1

FRCP 26(a)(2) . . . . . . . . . . . . . . . . . . 1, 9, 10

FRCP 37(c) . . . . . . . . . . . . . . . . . . . . . 9

# I. INTRODUCTION

Defendant accuses plaintiffs of being "foolish" and "frivolous"[1] in the filing of this in limine motion, sanctionable conduct if true. This charge, as well as defendant's attitude throughout their opposition brief calls to mind the adage given to young lawyers starting out in practice that when the facts are on your side pound on the facts, when the law is on your side pound on the law, when neither are on your side pound on the table.

Defendant argues that Dr. Meriwether is "highly qualified," and "board certified" as a neurosurgeon. Dr. Meriwether's preeminence, vel non, is not determinative on the issue presented. The issue is whether Dr. Meriwether's report and proposed testimony complies with the requirements of Evidence Rule 702 and Civil Procedure Rule 26(a)(2) in what the literature refers to as this "post-Daubert era." Dr. Meriwether's approach is unscientific, his expertise is in the wrong field and his report failed to state all the opinions he apparently intends to testify to at trial. No amount of table pounding by defendant will alter the insurmountable obstacles to admissibility of Dr. Meriwether's proposed testimony.

# II. ARGUMENT

### A. **Doctor Meriwether's methodology is unscientific and therefore inadmissable**.

Defendant does not, and cannot dispute that Dr. Meriwether issued his opinion after reading only 3 of the 8 fact witness depositions, some but not all of the medical records and some of

---

[1] Defendant's Response, p. 2, L.8 and p. 16, L. 4.

the medical literature on cauda equina syndrome that he attached to his report. Defendant justifies this by arguing that Dr. Meriwether was just doing "what doctors do," reviewing medical records and literature to come up with a diagnosis. Unfortunately for defendant, when doing what doctors do, Dr. Meriwether was not doing what experts do.

The U.S. Supreme Court in <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167, 143 L. Ed. 2d 238 (1999), stated that when exercising its <u>Daubert</u> gatekeeping functions the trial court is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Id</u>., 526 U.S. at 152. Defendant acknowledges that the <u>Daubert</u> inquiry under Evidence Rule 702 is whether the expert testimony is based upon sufficient facts or data applied through reliable principles and methods to the facts of the case. The facts of this case that the experts are to apply have been established by the very depositions Dr. Meriwether ignored. Ignoring these facts renders Dr. Meriwether's opinions unreliable under <u>Daubert</u>.

Defendant has cited no authority for its argument that Dr. Meriwether was just doing what doctors do when ignoring vast amounts of the factual basis of this case. Defendant attempts to distinguish <u>United Phosphorus, Ltd. v. Midland Fumigant, Inc.</u>, 173 F.R.D. 675 (D.Kan.,1997) by arguing that the expert there who failed to review vital deposition evidence was an economist in a

- 2 -

trademark infringement case, rather than a doctor doing what a doctor does. The case was obviously cited for the principles it establishes for the thoroughness required of an expert for his methodology to be deemed scientific. Defendant does not attempt to distinguish Ascher v. Target Corp., __F. Supp. 2d __, 2007 WL 328744 at *7 (E.D.N.Y. 2007) which holds that the expert's "failure to interview Ascher or read her deposition transcript fatally undermines his expert 'opinion' since his analysis was based on incorrect assumptions of fact." Id. See also, Minisan v. Danek Medical, Inc., 79 F. Supp. 2d 970, 976 (N.D. Ind. 1999)(medical device products liability claim where plaintiff's expert was determined to be "unreliable" under Daubert analysis since he arrived at his conclusion based solely on examination of plaintiff's medical records.)

At various times during Dr. Meriwether's deposition he professes to be unaware of facts of this case established by deposition testimony he did not read.[2] For example, on pages 50 to 51, Dr. Meriwether testified as follows:

> Q. Thank you. Am I correct in my understanding, Doctor, that you are not going to be testifying at trial to give an opinion that waiting 14 or 15 days to review a radiologist's report is within the standard of care?
>
> MS. CLARK: Object to the question to the extent it assumes facts not in evidence.
>
> A. I'm unaware that that's a fact in this case.
>
> BY MR. KEOGH:

---

[2] See, Meriwether transcript, p. 50, L. 21, p. 51, L.1, p. 108, L. 13, pp. 108-9, and p. 118, L. 11.

- 3 -

> Q. But you will not be testifying to that at trial, correct?
>
> A. I'm unaware of the facts in the case. You're asking me to testify whether or not a UFO landed in the hospital parking lot. I have no evidence that it did or didn't.

Defendant calls the fact that Dr. Meriwether was unaware that MRI scans were available on Guam a "red herring" since Dr. Meriwether testified at his deposition that he would not have had an MRI done on plaintiff.[3] However, in Conclusion 8 of his report Dr. Meriwether describes an MRI as being "key to establishing the diagnosis." The about face on this issue at his deposition just underscores how his failure to consider so much of the evidence in this case before stating an opinion renders his report and proposed testimony unreliable, unscientific and unable to assist the trier of fact. His testimony is inadmissable under Evidence Rule 702.

B.  **Dr. Meriwether remains the wrong expert for this case**.

Defendant argues that Dr. Meriwether should be permitted to testify since he is a highly qualified, board certified neurosurgeon and is the only expert in this case who has ever actually surgically treated a patient with cauda equina syndrome. This argument emphasizes how defendant continues to misapprehend the nature and essence of plaintiffs' claim.

From the outset, plaintiffs' claim has been that the AAFB urgent care clinic was negligent in failing to properly recognize

---

[3] The fact that MRI's were available on Guam could have been confirmed by reading the transcript of Dr. Duncan, which Dr. Meriwether did not do. Second Keogh Dec., Ex. A.

- 4 -

and diagnose Deborah Rutledge's neurological condition and refer her in a timely manner for appropriate specialist care. Plaintiffs have asserted no complaint about the diagnosis of long standing cauda equina syndrome by Dr. Duncan at the Naval Hospital on August 27, 2004, other than the delay in getting it, or about the surgery performed the next day at Tripler Hospital.[4] Contrary to defendant's wish, there is no surgical or neurosurgical issue presented in this case. The liability issue is one of emergency room/urgent care clinic negligence.

Dr. Meriwether is not qualified to give an opinion on the standard of care at the AAFB urgent care clinic. He states no opinion on the standard of care at the AAFB clinic in his report. Indeed, the term "standard of care" is nowhere to be found in his report. At his deposition he tried to interject standard of care testimony from a neurosurgeon perspective for the first time,[5] but when pressed on specific obligations of physician assistants and nurse practitioners he stated flatly, "I have no opinion on that."[6]

In <u>Myles v. Laffitte</u>, 986 F. 2d 1414, 1993 WL 36062 (4th Cir. 1993) the court refused to allow a pediatrician to give an opinion on the standard of care expected of a family practitioner stating that the "consensus is that specialists are held to a different standard of care than that required of a general practitioner."

---

[4] See, Towle transcript, pp. 66-7, Second Keogh Dec. Ex. B.

[5] See, Meriwether deposition transcript, pp. 45-50.

[6] See, Meriwether deposition transcript, pp. 52-53.

- 5 -

Id., 1993 WL 36062 at *2. The 4th Circuit opinion goes on to cite numerous supporting opinions from a variety of jurisdictions. Id.

Similarly, in Ly v. Austin, 2007 WL 2010757 (Tex. App.), a case highly relevant to the case at bar, the Texas Court of Appeals refused to allow a physician who was board certified in physical medicine and rehabilitation who regularly treated stroke patients in her practice to give an opinion on the actions of neurologists providing emergency room care to a patient who had just suffered a stroke. The court noted that "every licensed doctor is not automatically qualified to testify as an expert on every medical question." Id. at *4, citing Broders v. Heise, 924 S.W. 2d 148, 153 (Tex. 1996)("What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.") The fact that Dr. Meriwether treats cauda equina syndrome patients and even performs spinal surgery on them does not qualify him to give an opinion on the standard of care of the urgent care medical personnel at the AAFB clinic. Defendant states, "the treatment of cauda equina is within the province of the neurosurgeon and not the emergency room physician." If so, the converse must follow; that determining the standard of care for the treatment and referral of a cauda equina patient in an emergency room setting is within the province of the emergency room physician and not the neurosurgeon. Despite his neurosurgical credentials, Dr. Meriwether is simply the wrong expert for this case.

- 6 -

Defendant has made no attempt to discuss or distinguish the cases cited in plaintiffs' opening memorandum on this issue, including two cases where this defendant, The United States of America, successfully challenged the admissibility of testimony of experts whose expertise was in the wrong field. Whisnant v. United States, 71 Fed. R. Evid. Serv. 551, 2006 WL 2927732 (W.D. Wash. 2006) and Cleveland v. United States, 457 F. 3d 397 (5th Cir. 2006). Cleveland, a Federal Tort Claims Act medical malpractice case against the United States, presents a particularly compelling opinion supporting plaintiffs' argument here.

In Cleveland, the plaintiff claimed the emergency room personnel at the Bayne Jones Army Community Hospital (BJACH) failed to properly diagnose her husband's congestive heart failure resulting in his death. At trial plaintiff proffered two experts, a certified legal nurse consultant and an internist, to give opinions on the standard of care in the hospital emergency room. Upon motion from the United States, the district court excluded both experts from testifying on the grounds that their expertise was in the wrong field. On appeal the 5th Circuit noted that at trial the United States moved to exclude the expert internist,

> arguing that Dr. Piland was not qualified to testify as to the care and treatment of Samuel at the BJACH or to the relevant standard of care, as he was an internist and not an emergency room physician. Applying Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L. Ed. 2d 469 (1993), the district court concluded that although Dr. Piland was qualified as an expert in internal medicine, his testimony went beyond the scope of a treating physician and thus did not meet the Daubert test for reliability. The district court thus excluded Dr. Piland's testimony as to the standard of care in an emergency room.

- 7 -

Cleveland v. United States, 457 F. 3d at 401.

The district court found against the plaintiff since without the proper expert she was unable to establish the standard of care in an emergency room setting. On appeal the 5th Circuit upheld the district court's decision specifically noting that emergency room medicine is considered its own medical specialty and that "only those qualified in that specialty may offer expert testimony and evidence on the applicable standard of care." Id. at 405.

Dr. Meriwether may well be, as defendant asserts, highly qualified as a neuro-surgeon. However, that does not qualify him to give an opinion on the core liability issue in this case of the negligence of the urgent care personnel at the AAFB clinic. Hall v. Baxter Healthcare Corp., 947 F. Supp.1387, 1407 (D. Or.,1996.)(doctor's "impressive credentials" not enough to support admissibility if testimony does not "fit" the case.)

Similarly, by his own admission Dr. Meriwether is not qualified to give any opinion on damages. Neurologist Dr. John Steele examined Deborah Rutledge and performed a disability evaluation, something that Dr. Steele does regularly in his practice. Dr. Meriwether, who never examined Mrs. Rutledge, testified at his deposition that he is not qualified to do disability ratings and is not doing one with respect to Deborah Rutledge here.[7] Dr. Meriwether has no relevant, reliable opinions to give to assist the trier of fact on any issue in this case.

---

[7] Meriwether deposition, pp. 92-3, and 152.

- 8 -

### C. Dr. Meriwether's testimony is also excludable under Civil Procedure Rules 26(a)(2) and 37(c).

Defendant makes the bald assertion that all of Dr. Meriwether's opinions are contained in his report, just not written in "bullet points" or at an elementary school level. It is irrefutable, however, that Dr. Meriwether repeatedly stated at his deposition that he intends to give opinions on standard of care issues, on the quality of care provided by the nurse practitioner and physician assistant at the AAFB clinic, and on critiquing Dr. Towle's and Dr. Steele's reports and testimony, even though nothing appears in his report about any of those issues.

Defendant claims plaintiffs are not prejudiced by this failure because Dr. Meriwether's deposition was taken in Florida at plaintiffs' request so that the doctor could bring his records with him, arguing that this evidences that plaintiffs intended to inquire beyond Dr. Meriwether's report.[8] However, taking the deposition in Florida did no good in this regard since Dr. Meriwether still did not have requested records with him.[9] In addition, how the location of the deposition affects the failure of Dr. Meriwether to include in his report all the opinions he will testify to at trial is a mystery. The mere failure to provide the

---

[8] Defendant surprisingly attached some letters and other evidence as unverified "exhibits" to their opposition brief. Initially, plaintiffs move to strike these exhibits. Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1550-51 (9th Cir. 1990). If they are not stricken, plaintiffs have attached the letters on the issue left out by defendant as Ex. C to the Second Keogh Declaration for the sole purpose of completing the record.

[9] Meriwether deposition, pp. 21, 53.

- 9 -

opinions constitutes prejudice. <u>Jacobsen v. Deseret Book Co.</u>, 287 F.3d 936 (10th Cir. 2002). Defendant's assumption that taking the deposition in Florida somehow would excuse Dr. Meriwether's report deficiencies was unstated and simply unjustified.

Merely serving an expert report within the time limits established, as defendant argues, is not in and of itself enough to satisfy the requirements of Rule 26(a)(2). There were, indeed, other deficiencies in Dr. Meriwether's report which are not raised in this motion, however, the failure of the report to "contain a complete statement of all opinions to be expressed" is raised by this motion and it is such a momentous failure that courts routinely strike the testimony of experts who do not comply, even if striking the testimony has the effect of undermining a parties claim or defense. <u>Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico</u>, 248 F.3d 29, 34 (1st Cir. 2001).

### III. CONCLUSION

For the reasons set forth in plaintiffs' opening memorandum, and those set forth herein, plaintiffs' motion in limine should be granted and Dr. Meriwether's proposed testimony should be stricken and he should be precluded from testifying at trial.

**LAW OFFICE OF ROBERT L. KEOGH**
Attorneys for Plaintiffs

DATE: 1/30/08

By: /s/ Robert L. Keogh
ROBERT L. KEOGH

- 10 -

**CERTIFICATE OF SERVICE**

I, Robert L. Keogh, hereby certify that on the 30th day of January, 2008, I caused to be served via hand delivery, a true and correct copy of the attached document entitled **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE OR LIMIT TESTIMONY OF DR. MERIWETHER AT TRIAL; CERTIFICATE OF SERVICE** in the above-captioned matter upon the following office as set forth below:

Mikel W. Schwab
Assistant U. S. Attorney
District of Guam
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatña, Guam 96910

**LAW OFFICE OF ROBERT L. KEOGH**
Attorneys for Plaintiffs

DATE: 1/30/08

By: _____
**ROBERT L. KEOGH**