LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
KATHARYNE P. CLARK
Special Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

**ORIGINAL**

**FILED**
DISTRICT COURT OF GUAM

MAR 0 3 2008

JEANNE G. QUINATA
Clerk of Court

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| DEBORAH K. RUTLEDGE and THOMAS R. RUTLEDGE, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL CASE NO. 06-00008 <br><br> ADMISSIBILITY OF ALLEGED STATEMENT OF DOUGLAS DUNCAN, MD |

Plaintiff testified that Doctor Douglas Duncan had stated to her that her treatment at the Andersen Air Force Base (AAFB) Clinic was "criminal". Doctor Duncan denies making the statement. The Court concluded it was admissible as a party admission.[1] The United States believed that it could not be a party admission because the Navy doctor is not the same party as the Air Force health care professionals at the AAFB Clinic who are accused of malpractice. The Court asked for the United States to research and submit this briefing.

The Court is correct in its' conclusion that a statement allegedly made by one government

---

[1] The statement is based on double hearsay. Rule 805. Plaintiff is saying that the Doctor said it to her and his statement was based on what she said to him about the Andersen Clinic. The basis of the doctor's alleged statement is her hearsay, as opposed to his first-hand knowledge. So even if the doctor's statement is admissible, the basis of the alleged statement is itself hearsay.

employee can, within the discretion of the Court, be admitted as a non-hearsay, Rule 801(d)(2) 'party admission' against another federal employee.

A number of cases speak to the Court's discretion in allowing such a statement to be treated as non-hearsay. Jacoby Airplane Crash Litigation, 2007 WL 2746833 (D.N.J), 74 Fed. R. Evid. Serv. 833 (an editorial by the Federal Air Surgeon could be admissible as a non-hearsay admission); Limone v. United States, 497 F.Supp.2d 143, 2007 WL 2141959, at *9 n.31 (D.Mass. July 26, 2007) (finding testimony of currently unavailable FBI agents before House Committee on Government Reform admissible as party admissions over government's hearsay objection, even though at time of testimony agents were no longer employed by government); Dunque v. United States, No. 05-1417, 2006 WL 2348533, at *10 n.7 (N.D. Ga. Aug. 9, 2006) (suggesting that statement by doctor working at United States prison medical facility might be admissible against the government); Rodriguez v. United States, 69 Fed. Cl. 487, 493 n.8 (Fed.Cl. 2006) (finding deposition testimony, from separate legal proceeding, of five employees of the United States to qualify as admission by party-opponent under Rule 801(d)(2)(D) because "all five deponents are current employees of the United States and they limited the subject matter of their statements to the scope of their employment"); PR Contractors, Inc. v. United States, 69 Fed. Cl. 487, 493 n.8 (Fed Cl. 2006) (finding Rule 801(d)(2) applicable to statements made by employees of U.S. Army Corps of Engineers in contract action against the United States); Hurd v. United States, 134 F.Supp.2d 745, 749 (D.S.C. 2001) (finding that testimony regarding boating accident, given by Coast Guard personnel before National Transportation Safety Board, was admission of party opponent, and thus not hearsay, when offered in FTCA action against the United States); Gess v. United States, 952 F.Supp. 1529, 1534 n.7 (M.D. Ala 1996) (finding report prepared by Air Force Office of Special Investigations admissible against government under Rule 801(d)(2) in FTCA action by Air Force hospital patients because report was conducted consistent with Air Force policy, reviewed for trustworthiness, and never contradicted); Huber v. United States, 838 F.2d 398, 403 (9th Cir. 1988) (suggesting that a report by the Coast Guard regarding the sinking of a ship might be admissible, under Rule 801(d)(2),

against the government in an FTCA action but for the statutory prohibition on the use of such reports in litigation).

The United States can find no case to parallel this one, where an alleged statement by a health provider in one service is claimed by a Plaintiff to further her case against health providers in another military branch. The situation of a medical malpractice action under the FTCA has a unique quality. The FTCA provides a remedy against the United States specifically and solely for injuries "caused by the negligent or wrongful act or omission **of any employee of the Government** while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable..." 29 U.S.C. § 1346(b) (emphasis added). In this instance, the Court would have to find that two medical providers, Natalie Giscombe, Nurse Practitioner, and Steven Rau, Physician's Assistant, both committed medical malpractice by treating the Plaintiff for a bulging disc when, according to the Plaintiff, her disc had, in fact, burst and she was experiencing the quick onset of Cauda Equina Syndrome (as opposed to the disc bursting approximately three days prior to her Naval Hospital visit).[2] If there is somehow a finding of negligence in this case it will, of course, attach to the two health care professionals accused by the Plaintiff.

In weighing the statement, the United States would advocate that the Court consider that the Plaintiff has made allegations about 'admissions' against more than one health care provider in this case. When Steven Rau expressed his sympathy for what happened to her, Plaintiff claimed he had admitted a "misdiagnosis".[3] *See* Plaintiff's Direct Examination of Steven Rau;

---

[2] To conclude this the Court would have to discredit the testimony of Doctor Douglas Duncan, for one, who testified that Plaintiff's Cauda Equina compression was the result of an acute rupture of the lumbar disc. The disc rupture and the resultant Cauda Equina compression was a separate event from the spinal nerve root compression that caused Plaintiff to experience back and leg pain. The onset of Cauda Equina was heralded by the onset of fecal incontinence two days prior to the time Doctor Duncan examined Plaintiff. Dr. Duncan testified that the Cauda Equina was acute and that Plaintiff's outcome was "good" because he diagnosed it early.

[3] Steven Rau treated the Plaintiff appropriately and well within the standard of care for a bulging disc. Plaintiff's claim is that she had characteristics of Cauda Equina, including a "numb vagina" and that she reported this to a number of persons at the clinic, yet the medical records and recollections of the providers reflect no such complaint ever being made.

*also See* **Attachment 1** to this filing. Steven Rau testified that he did not make the statement she claims. She now also claims that Doctor Duncan said that the treatment she received from Natalie Giscombe and Steven Rau at Andersen Clinic was "criminal". Doctor Duncan denies saying that.

Some light can be shed on the origin of this statement. Government's EXHIBIT Y is Plaintiff's self-serving "To Whom It May Concern" letter from the Plaintiff. **Attachment 2** to this filing. It is dated "31 October 2004" at the top. The letter was given to the United States in discovery. What is most revealing is what is missing from the letter. The same letter is included as exhibit 4 to her expert's (Dr. Towle's) report. In that letter, however, she fails to cover two crucial lines she redacted from the letter shown to the government. Those lines, referring to the Andersen Clinic, are:

> "*I find this unacceptable and on the verge of being **criminal**. I would assume an investigation is in order, if not, I will seek other avenues to get this done.*"

(emphasis added).

Dr. Duncan testified that he 'does not speak like that' and would never use the words she claims he said. From the sentence, cleverly redacted from the letter provided in discovery, it is apparent that the description of Andersen Clinic as "criminal" is Plaintiff's.

The doctor's statement should not be admitted. However, if it is admitted it should be given no weight except to show the pattern of Plaintiff attempting to bolster her claim for money damages by overzealously attributing her own self-serving statements to others.

//
//
//
//
//
//
//

Respectfully submitted this 28th day of February, 2008.

> LEONARDO M. RAPADAS
> United States Attorney
> Districts of Guam and CNMI
>
> By: _____
> MIKEL W. SCHWAB
> Assistant U.S. Attorney
> KATHARYNE P. CLARK
> Special Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I, Jacqueline Emmanuel, Administrative Assistant, working in the U.S. Attorney's Office, in the District of Guam, hereby certify that, on March 3, 2008, I caused to be served by personal service a copy of the "Admissibility of Alleged Statement of Douglas Duncan, MD", in Civil Case No. 06-00008, <u>Deborah K. Rutledge and Thomas R. Rutledge vs. United States of America</u>, to the following attorney of record:

> Robert L. Keogh
> Law Offices of Robert L. Keogh
> 251 Martyr Street, Suite 105
> Hagatna, Guam 96910

*/s/ Jacqueline Emmanuel*
JACQUELINE EMMANUEL
Administrative Assistant

# Attachment 1

Plaintiff's Letter Alleging a Statement about Misdiagnosis

April 4, 2005

I went to the gym with Sherry Boldin, after we worked out we went to the Health and Wellness Center (HAWC) to get a body fat measurement. Dr Rau was the person in charge of the HAWC and signed us in. Dr. Rau is the 2nd person I saw at the Andersen Clinic when I started having back pain in July 04. He asked for my name and when I gave it to him he said "I thought I recognized you". He said he was sorry (while Sherry Boldin was standing there) and asked if he could speak to me privately. In private he apologized for what happened last year and for the mis-diagnosis and said he would have done it sooner but wasn't supposed to have contact with me. He asked how I was doing and what medications I was taking. I thanked him for the apology because he is the first person to admit that they had done something wrong.

Debbie Rutledge

Attachment 1

# Attachment 2

Plaintiff's Letter that was Provided to the United States

31 October 2004

To Whom It May Concern:

On the 27th of July I woke up and had lost feeling in my backside and parts of my vaginal area. I also had numbness on the bottom of my feet and back of my legs. I called the hospital and made an appointment for that day with family practice. I saw Dr. Giscombe who told me it was a pinched or inflamed nerve. She prescribed Napraxen for inflammation and flexural and vicodin for the pain. I took this medication for a week and was feeling no better.

I started to have trouble urinating a few days later, so I called the hospital on Aug 2nd to get another appointment. They tried to put me off a week but I was adamant about being seen as soon as possible. I saw Dr. Raul and he took x-rays and said he saw something but he didn't think it was affecting my lower back. He said he would send the x-rays to the Naval hospital and it would take 10 days to get something back. I told him about not being able to urinate properly and that it would take up to 45 minutes with me pressing on my stomach just to release a little urine and then felt like I had to go again within a few minutes. I also told him about the loss of feeling in my feet and the back of my thighs. He told me it was probably an inflamed nerve and prescribed more vicodin and added Valium and told me to continue taking the Napraxen. He also told me he was putting in a consult for physical therapy and that I should call them that afternoon. I called physical therapy to make an appointment later that day (Aug 2nd) but they didn't have any information on me.

I waited until the 17th of August but heard nothing from the hospital about the x-rays or the physical therapy. At this point I was in horrible pain and sleeping twelve to fourteen hours a day because of the drugs. I decided to try and get a referral to the Naval hospital on the 17th of August. I was tired of not being listened to, was in constant pain and felt that something was seriously wrong. Again they tried to put me off until the 24th of August. Again I was adamant about being seen as soon as possible. I saw Dr. Giscombe again. She told me that from my x-rays it looked like I may have a herniated disc. She finally put in the consult to orthopedics after I told her I did not want to be seen at the Andersen hospital again. She also added Vioxx to the list of medications that I was to take.

I went to the Naval hospital on the 27th of August and told Dr. Duncan the same things that I had been telling the Doctors at Andersen for three weeks. They immediately med evac'd me to Hawaii for emergency surgery that day.

The doctors in Hawaii diagnosed me with Cauda Equina Syndrome. The doctors at the Naval hospital and Tripler Army Hospital have said I may never regain the feeling in my legs, buttocks or vaginal area or proper bladder and bowel function due to the amount of time it took to get my condition diagnosed. I was also informed that there is no excuse for the lack of diagnosis from the Andersen doctors. I made three separate visits over a three week time frame and saw two doctors neither of whom took the time to listen to me or get a second opinion until I told them I did not want to be seen at Andersen again. All they wanted to do was prescribe pills and get me out of the office. I


EXHIBIT Y

Attachment 2

31 October 2004

    Also, my medical records have come up missing. First of all, my records from Whiteman AFB never arrived when my husband and I PCS'd in Oct 03. Repeated attempts with Andersen hospital records section have failed to get my original medical records to Guam. My records that were put together for hospital visits to Andersen hospital during the past year have also disappeared. I have been in contact with the records section again several times since returning from Hawaii in September about the records to no avail. Where are my medical records?

    I can think of nothing positive to say about my experiences with the Andersen hospital. I believe that there may be some very fine people working there that are highly qualified in what they do. However, my level of care has been unacceptable and emotionally scarring! I would like some answers!

*[signature: D. Rutledge]*

Deborah K. Rutledge
(671) 653-1736

# Attachment 3

Plaintiff's Letter as it Appears Attached to the Plaintiff's Expert Report

To Whom It May Concern:

On the 27th of July I woke up and had lost feeling in my backside and parts of my vaginal area. I also had numbness on the bottom of my feet and back of my legs. I called the hospital and made an appointment for that day with family practice. I saw Dr. Giscombe who told me it was a pinched or inflamed nerve. She prescribed Napraxen for inflammation and flexural and vicodin for the pain. I took this medication for a week and was feeling no better.

I started to have trouble urinating a few days later, so I called the hospital on Aug 2nd to get another appointment. They tried to put me off a week but I was adamant about being seen as soon as possible. I saw Dr. Raul and he took x-rays and said he saw something but he didn't think it was affecting my lower back. He said he would send the x-rays to the Naval hospital and it would take 10 days to get something back. I told him about not being able to urinate properly and that it would take up to 45 minutes with me pressing on my stomach just to release a little urine and then felt like I had to go again within a few minutes. I also told him about the loss of feeling in my feet and the back of my thighs. He told me it was probably an inflamed nerve and prescribed more vicodin and added Valium and told me to continue taking the Napraxen. He also told me he was putting in a consult for physical therapy and that I should call them that afternoon. I called physical therapy to make an appointment later that day (Aug 2nd) but they didn't have any information on me.

I waited until the 17th of August but heard nothing from the hospital about the x-rays or the physical therapy. At this point I was in horrible pain and sleeping twelve to fourteen hours a day because of the drugs. I decided to try and get a referral to the Naval hospital on the 17th of August. I was tired of not being listened to, was in constant pain and felt that something was seriously wrong. Again they tried to put me off until the 24th of August. Again I was adamant about being seen as soon as possible. I saw Dr. Giscombe again. She told me that from my x-rays it looked like I may have a herniated disc. She finally put in the consult to orthopedics after I told her I did not want to be seen at the Andersen hospital again. She also added Vioxx to the list of medications that I was to take.

I went to the Naval hospital on the 27th of August and told Dr. Duncan the same things that I had been telling the Doctors at Andersen for three weeks. They immediately med evac'd me to Hawaii for emergency surgery that day.

The doctors in Hawaii diagnosed me with Cauda Equina Syndrome. The doctors at the Naval hospital and Tripler Army Hospital have said I may never regain the feeling in my legs, buttocks or vaginal area or proper bladder and bowel function due to the amount of time it took to get my condition diagnosed. I was also informed that there is no excuse for the lack of diagnosis from the Andersen doctors. I made three separate visits over a three week time frame and saw two doctors neither of whom took the time to listen to me or get a second opinion until I told them I did not want to be seen at Andersen again. All they wanted to do was prescribe pills and get me out of the office. I find this unacceptable and on the verge of being criminal. I would assume an



investigation is in order, if not, I will seek other avenues to get this done.

Also, my medical records have come up missing. First of all, my records from Whiteman AFB never arrived when my husband and I PCS'd in Oct 03. Repeated attempts with Andersen hospital records section have failed to get my original medical records to Guam. My records that were put together for hospital visits to Andersen hospital during the past year have also disappeared. I have been in contact with the records section again several times since returning from Hawaii in September about the records to no avail. Where are my medical records?

I can think of nothing positive to say about my experiences with the Andersen hospital. I believe that there may be some very fine people working there that are highly qualified in what they do. However, my level of care has been unacceptable and emotionally scarring! I would like some answers!


Deborah K. Rutledge
(671) 653-1736