LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
KATHARYNE P. CLARK
Special Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: (671) 472-7332
Fax: (671) 472-7215

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
MAR 0 3 2008
JEANNE G. QUINATA
Clerk of Court

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| DEBORAH K. RUTLEDGE and THOMAS R. RUTLEDGE,<br><br>Plaintiffs,<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL CASE NO. 06-00008<br><br>UNITED STATES HAS NO OBJECTION TO THE DEPOSITION OF LCDR HUGH MCSWAIN, M.D. |

Dr. Hugh McSwain, M.D. the neurologist who read Plaintiff's xray that was taken at AAFB Clinic, was deposed on May 22, 2007. Approximately three objections were raised during the cross-examination of Dr. McSwain (one by Plaintiff) and approximately seven were raised during the re-cross. Dr. McSwain answered all the questions as best he could and the United States has no objections to the deposition transcript now being included in the Court's record.

A review of the objections, no longer extant, is as follows:

1

The United States arranged and paid for a VTC conference with Dr. McSwain but, due to time limitations on the facilities, quickly introduced Dr. McSwain, had him recite his background and then turned him directly over to the Plaintiff for his cross-examination.

Plaintiff first established that the Dr.'s only *"involvement in this treatment ...was having read an x-ray..."* (Page 14 of the Deposition). Then Plaintiff began asking questions about the Composite Health Care System and about Urology. The witness's discomfort is well documented:

*"...this is stepping outside my bounds of expertise..."* (Page 19)

*"...Again, that's getting outside my level of expertise..."* (Page 20)

*"...I'm not an expert in CHCS,..."* (Page 23)

*"...I would be guessing at that."* (Page 23)

*"....Other than that, I'd be speculating..."* (Page 28)

*"...All I can read is a lumbar spine series"* (Page 32)

*"...That's a better question for someone who does physical exams..."* (Page 35)

Nevertheless, the Dr. did struggle to answer each of the questions, some extensively.

Finally, at page 37-9, the United States made its objections:

KEOGH *"...You've described that as meaning a person would have leakage or urinate when they are not intending or wanting to.*

SCHWAB *"I'm going to object because I don't know that that was the testimony. He's testified that this is not his area of expertise.*

KEOGH *"All right. Your objection is noted.*

*Doctor, am I correct in my understanding that your interpretation of the words in the history of no bowel or bladder incontinence, is that the patient would not have been having leakage or urination when they did not want to?*

2

MCSWAIN *"By reading that history, I would say, to me, that means the patient is not having involuntary loss of bowel and bladder symptoms.*

KEOGH *"Okay. Would there have been a term that could have described for you a condition in a patient where they are not able to urinate when they want to?*

MCSWAIN *" None that I can think of off hand. This is – (pauses)*

KEOGH *"I'm sorry, did you want to continue?*

MCSWAIN *"No. I'm saying again that's outside my area of expertise. The urologist or the person doing the physical exam would be a much better person to ask about that. But for myself, no, no term comes to mind.*

....

....

KEOGH *"... So with respect to a determination of urgency, if the history had said the patient was not able to urinate when they wanted to, would that have affected your determination whether this was urgent or not urgent matter?"*

SCHWAB *"I'm not sure if I understand the questions. So, I'm going to object on just lack of clarity.*

KEOGH *"Do you understand the question, Dr. McSwain?*

MCSWAIN *"No, I don't"*

Plaintiff then goes on to again about bowel or bladder incontinence. (Page 40)

KEOGH *"....would that have changed your determination of whether this is urgent or not urgent?*

SCHWAB *"I'm going to object because it calls for the witness to speculate. He is the fact witness. So, that puts in facts that were not in place at the time that he did this*

3

1 | *reading."*
2 | KEOGH *" You can go ahead and answer the question, doctor.*
3 | MCSWAIN *"The history is not classic for something that would become an urgent matter for me.*

The next objection came at the break (Page 46). It was raised by plaintiff.

KEOGH *" I just want to, since this is a perpetuation deposition, I'm going to note an objection to counsel talking to the witness during the break.*

SCHWAB *" That's a problem with you?"*

KEOGH *"I just put it on, an objection on the record."*

SCHWAB *"Maybe I won't do it. Okay."*

The Redirect then took place. (Pages 47 to 51). On Plaintiff's re-cross, the Plaintiff concentrated on asking for Dr. McSwain's opinion about the standard of care at US Naval Hospital. (Page 53).

KEOGH *"...is it your understanding that the standard of care, the medical care, that's provided at the Guam Naval Hospital is less than the standard of care that is provided elsewhere in the Naval Hospital system?*

SCHWAB *" Objection. That's an unfair question."*

KEOGH *"You can answer it doctor."*

MCSWAIN *"I would not say that the standard of care at Guam is less..... . You're getting people who were trained at these institutions. They care certainly no less about patient ... .*

....

The questions and answers about the "standard of care" continued. The US pointed out again that the question of standard of care is for an expert to conclude. (Page 55).

SCHWAB *"There are federal regulations that state a person should not be giving*

4

*an expert opinion unless – if he's a fact witness, unless he is called as an expert witness. So, the Department of Defense would object to that and that makes perfect sense for him too."*

KEOGH *"All right. With that objection noted, doctor, ..... ."*

Plaintiff again asks about the "standard of care".

SCHWAB *"Objection, asked and answered."* (Page 55)

Dr. McSwain then goes on to clarify his earlier answer and ends with "that's all I can add to that." (Page 56).

Plaintiff continues to talk about the standard of care at USNH.

KEOGH *"... .*

*... the implication is that treatment a patient would get at the remote facility is somehow lesser than the treatment that would be provided at a non-remote facility. ... .*

SCHWAB *"Objection, that mis-characterizes the testimony referred here today.*

KEOGH *"Do you understand what my question is with respect to classifying Guam as remote. Does that signify in your mind when you classify it as remote as signifying that a lesser standard of care is provided to the patients there than in a non-remote location.*

SCHWAB *"Objection, asked and anwered, not relevant and it is not posed as a question.*

*... .*

Dr. McSwain then answers the question again. (Page 57)


MCSWAIN *"... . I do not have the ability to classify any hospital, whether in the Navy or anywhere else, as to what their capabilities are. ... ."*

On Page 58, Plaintiff asks again for Dr. McSwain to give his opinion about the standard of care at Naval Hospital compared to the Regional Naval Hospital at San Diego.

KEOGH *" ... does that signify that the standard of care at the Guam Hospital is*

5

1 | *lower than the standard of care at, for example, San Diego Hospital?"*
2 | SCHWAB *"Objection, that's an outrageous question."*
3 | The question is restated again saying, "the standard of care in radiology at the Guam Hospital is lower or lesser than the standard of care provided at the Naval Hospital in San Diego?' (Page 58).
4 | MCSWAIN *"I cannot make a blanket statement regarding the standard of care for radiology. Are there certain things can – the same person who is reading films, whether in San Diego or in Guam. And to me that means the standard of care is the same. But, that's my definition of standard of care.* (Page 59).

The questions all being fully answered by Dr. McSwain, and the Dr. having made clear that there was nothing emergent in the x-ray, and that there was no possible way to predict that the disc might, at some time in the future burst (and as it did just prior to Plaintiff's appointment with Dr. Duncan), the objections of the United States are satisfied or moot. No objections are extant.

Asking a fact witness, specifically, here, the radiologist who only read the x-ray, to give an opinion as to the standard of care at Naval Hospital Guam and Naval Regional Medical Center, San Diego, is problematic. Asking for an opinion about the standard of care is the quintessential expert witness question, and should be addressed to the expert only after a proper foundation has been made.

Further, military regulations specifically exist to caution its personnel from being asked for such expert conclusions without going through a process. Department of Defense and U.S. Navy regulations are clear. SECNAVINST 5820.8A states:

> DON personnel... shall not provide, with or without compensation, opinion or expert testimony concerning DOD information, subjects, personnel, or activities, except on behalf of the United States or a party represented by the

Department of Justice, or with the written special authorization required by this instruction.

SECNAVINST 5820.8A (4)(b).

The United States Army has a similar regulation, Army Regulation 27-40, § III, ¶ 7-10. AR 27-40 has a clause which specifically addresses testimony by medical personnel, which prohibits members from testifying to hypothetical questions or regarding a prognosis. AR 27-40, § III, ¶ 7-10 (c)(3). (This prohibition applies to the deposition of MAJ Joseph Orchowski, an Army physician.)[1]

With regard to the treatment they gave a patient, it would be reasonable to ask all necessary questions and give wide latitude to inquiry. But as to matters outside their expertise and, in particular, as to questions about the standard of care, with no foundation, the United States is correct to object.

Plaintiffs' counsel did not request authorization to pose expert questions to Dr. McSwain. Plaintiff did not lay any sort of foundation as to Dr. McSwain's knowledge about the standard of care or of matters outside his area of medical specialty. Thus, the United State's objections were necessary and proper.

Even outside of federal regulations as to DOD and federal employees, it is axiomatic that a fact witness cannot testify as to the standard of care unless and until he has been established as an expert witness with particular knowledge of the standard of care. No such foundation was attempted by the Plaintiff. In fact, the witness was consistent

---

[1] Federal agencies also have regulations on expert testimony. See Matthews v. Storgion, 2006 WL 988792, 174 Fed. Appx. 980, * 990 (C.A. 6, Tenn.) ("After defendant's challenged Scott's suitability as an expert, the trial court ruled that he could not testify as to the applicable standard of care. ...Scott revealed that he was testifying as a fact witness...and that the FDA, in fact, prohibited him from testifying as an expert witness.") (21 CFR Sect. 20.1(a) (2006)), also O'Neil v. Novartis Consumer Health Inc, 55 Cal Rptr 3d 551 (Cal App 2 Dist, 2007).

7

in asserting that he did not have the expertise to answer the questions posed by the Plaintiff.

In summary, the United States has no objections to the present deposition transcript being read into the record at trial. While the United States is correct to be cautious and make objections when the fact witness is being asked to testify as to the standard of care or as to matters he states he knows little about, Dr. McSwain's answers are appropriate and helpful.

Respectfully submitted this 3d of March, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

KATHARYNE P. CLARK
Special Assistant U.S. Attorney

8

# CERTIFICATE OF SERVICE

I, Jacqueline Emmanuel, Administrative Assistant, working in the U.S. Attorney's Office, in the District of Guam, hereby certify that, on March 3, 2008, I caused to be served by personal service a copy of the "United States has No Objection to the deposition of LCDR Hugh McSwain, M.D.", in Civil Case No. 06-00008, <u>Deborah K. Rutledge and Thomas R. Rutledge vs. United States of America</u>, to the following attorney of record:

> Robert L. Keogh
> Law Offices of Robert L. Keogh
> 251 Martyr Street, Suite 105
> Hagatna, Guam 96910

_____
JACQUELINE EMMANUEL
Administrative Assistant